**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WALTER FLORES,

Petitioner,

vs.

PAMELA BONDI, *et al.*,

Respondents.

Case No.: 2:26-cv-00240-GMN-NJK

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Walter Flores' Amended Petition for Writ of Habeas Corpus, (ECF No. 17). Federal Respondents Michael Bernacke, Todd Blanche, Pamela Bondi, Ruben Leyva, Todd Lyons, Markwayne Mullin, and Kristi Noem filed a Response, (ECF No. 19), to which Petitioner filed a Reply, (ECF No. 21).[1]

For the reasons discussed below, the Court GRANTS the Amended Petition and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner Walter Flores is a citizen of Honduras. (Am. Pet. 4:2, ECF No. 17); (*see also* I-213 at 1, Ex. 5 to Am. Pet., ECF No. 17-5). He entered the United States without inspection in 2001, when he was 16 years old. (Am. Pet. 4:2–3); (I-213 at 2, Ex. 5 to Am. Pet.). He was eventually arrested on traffic-related charges, and while he was in state custody, ICE issued a detainer and served him with a Notice to Appear on October 6, 2009. (Am. Pet. 4:4–5); (I-213 at 2, Ex. 5 to Am. Pet.). On April 30, 2010, Petitioner was ordered removed, and he was removed on May 25, 2010. (Am. Pet. 4:4–7); (I-213 at 2, Ex. 5 to Am. Pet.). Petitioner

[1] Respondent John Mattos, Warden of the Nevada Southern Detention Center, filed a Response to Petitioner's Amended Petition for Writ of Habeas Corpus, asserting that he has no independent authority to release Petitioner and takes no position on the Petition's merits. (*See generally* Mattos Resp., ECF No. 20).

returned to the United States in October 2012 and was removed in 2012. (Am. Pet. 4:8–9); (I-213 at 2, Ex. 5 to Am. Pet.). He returned again on April 22, 2013, and was removed on May 23, 2013. (Am. Pet. 4:9–10); (I-213 at 3, Ex. 5 to Am. Pet.).

On December 27, 2022, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") and released on an Order of Supervision ("OSUP") because ICE did not have enough detention space. (Am. Pet. 4:11–13); (I-213 at 3, Ex. 5 to Am. Pet.). On February 19, 2025, he was convicted of driving under the influence in Idaho and sentenced to 180 days of imprisonment. (I-213 at 3, Ex. 5 to Am. Pet.). He was re-detained by ICE that same day, and he has been in ICE custody ever since. (Am. Pet. 4:14–15); (I-213 at 2, Ex. 5 to Am. Pet.).

Petitioner asserted that he feared persecution or torture if he returned to Honduras, so he had an asylum interview and subsequently a hearing before an Immigration Judge. (Am. Pet. 4:15–24). However, the asylum officer concluded that he had not established a reasonable fear of persecution or torture, and the Immigration Judge affirmed that decision. (*Id.* 4:18–24). Petitioner filed a petition for review and motion to stay removal to the Ninth Circuit Court of Appeals. (*Id.* 4:24–27).

While in detention, Petitioner also requested and received a custody determination hearing, but an Immigration Judge denied bond on the grounds that his removal to Honduras was imminent and that he was a significant flight risk. (Am. Pet. 5:1–5). He appealed the Immigration Judge's decision to the Board of Immigration Appeals, where it remains pending. (*Id.* 5:5–8).

With this Petition, Petitioner now seeks immediate release from detention.

## II. <u>LEGAL STANDARD</u>

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Statutory Detention Scheme**

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge. 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where they may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the Immigration Judge will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158; 8 C.F.R § 208.2. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds

that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

## III. <u>DISCUSSION</u>

Petitioner alleges that he is entitled to habeas relief because (1) his detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (2) his custody hearing was constitutionally inadequate, for similar reasons. (*See generally* Am. Pet.). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

### A. Petitioner's Detention Violates the Fifth Amendment

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by the Department of Homeland Security ("DHS") that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Courts interpreting *Zadvydas* have held that "the six-month period does not reset when the government detains [a noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases); *see also Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sep. 25, 2025) ("Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and redetaining them."). The Court adopted this cumulative principle in *Doan v. Blanche*, No. 2:26-cv-00473-GMN-BNW, 2026 WL 949037 (D. Nev. Apr. 8, 2026), and applies it here as well.

**1. Authority and Length of Detention**

First, Petitioner is subject to a final order of removal. He is subject to a reinstated order of removal and was placed in "withholding-only" proceedings sometime after February 19, 2025. (Am. Pet. 4:15–24). A reinstated order of removal is administratively final even while withholding-only proceedings are ongoing. *Padilla-Ramirez v. Bible*, 822 F.3d 826, 831 (9th Cir. 2017). Because "[t]he removal order itself. . . is not at issue in the withholding-only proceedings . . . those proceedings cannot diminish or otherwise affect its finality." *Id.*

Second, Petitioner is detained under 8 U.S.C. § 1231. Respondents argue that ICE detained Petitioner under 8 U.S.C. § 1225(b), which authorizes mandatory detention. (Fed. Resp. 2:23–24, ECF No. 19). Respondents rely primarily on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), for this proposition. (*Id.* 2:24–3:13). But *Jennings* explains that "once [removal] proceedings end, detention under § 1225(b) must end as well." 583 U.S. at 297. Because Petitioner is subject to a final order of removal, and is now only in withholding proceedings, he is detained under § 1231 rather than § 1225(b). *See Padilla-Ramirez*, 882 F.3d at 832.

Finally, Petitioner's detention has surpassed the six-month period of presumptive reasonableness under *Zadvydas*. Under § 1231(a)(5), if a person who was previously removed reenters the United States illegally, the prior order of removal "is reinstated from its original date and is not subject to being reopened or reviewed." Here, the prior order of removal was issued on April 30, 2010. (*See* I-871, Ex. 1 to Am. Pet., ECF No. 17-1). ICE detained Petitioner for 25 days before removing him in 2010, re-detained him for 66 days in 2012, re-detained him for 32 days in 2013, and then re-detained him most recently on February 19, 2025, 618 days before the issuance of this Order. (*See* I-213 at 2–3, Ex. 5 to Am. Pet.). Petitioner has therefore been cumulatively detained for over two years.

**2. Likelihood of Removal**

Because the six-month period of presumptive reasonableness has passed, the Court must determine whether Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents rebut that showing.

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. (Am. Pet. 8:21–9:6). He demonstrates there is no significant likelihood of removal to Honduras in the reasonably foreseeable future, and Federal Respondents fail to respond with evidence sufficient to rebut that showing or identify another country to which Petitioner could be removed. Because Petitioner is in ongoing withholding-only proceedings to determine whether he can be removed to Honduras, he cannot currently be removed to Honduras. (*Id.* 8:24–9:6). Thus, Petitioner meets his initial burden.

The burden thus shifts to Respondents to produce evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents do not address the likelihood of Petitioner's removal to Honduras or a third country, so they fail to provide any reason to believe that there is a likelihood of removal to a third country in the reasonably foreseeable future. They do not state whether a third country has been identified, explain any steps they have taken to remove Petitioner to that unidentified third country, or provide any other evidence to rebut Petitioner's initial showing. As a result, Federal Respondents have not "respond[ed] with evidence sufficient to rebut" Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. The Court therefore finds that Petitioner's continuing detention violates the Due Process Clause of the Fifth Amendment and that he is eligible for relief under *Zadvydas*.

**B. Scope of Relief**

First, Petitioner requests that he be released immediately. (Am. Pet. 13:16). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[2] *See Zadvydas*, 533 U.S. at 699–700.

Petitioner also requests that the Court grant any other relief, in the interests of justice, that may be appropriate. (Am. Pet. 14:1–2). In tailoring relief to the problem that gives rise to the due process violation, *see Morrissey*, 408 U.S. at 481, the Court finds that two other forms of relief are necessary to provide complete relief for the due process violation. First,

---

[2] 8 U.S.C. § 1231(a)(3) provides:

> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
>
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.[3] Second, Respondents are prohibited from removing Petitioner to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.[4]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Amended Petition, (ECF No. 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention no later than **November 3, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window. Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

---

[3] Respondents have the authority to detain noncitizens with final orders of removal to effect deportation. See 8 U.S.C. § 1231; *Zadvydas*, 533 U.S. at 697. But when a noncitizen has been released from immigration detention, the revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. DHS regulations permit revocation of release if the appropriate official: (1) determines that the noncitizen who has been released under an order of supervision violates any of the conditions of release, id. § 241.13(i)(1), or (2) finds "on account of changed circumstances" there is "a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," id. § 241.13(i)(2). The noncitizen must be notified of the reasons for their revocation and receive "an initial informal interview promptly," during which they will have "an opportunity to respond to the reasons for revocation stated in the notification" and submit evidence in support of their position. Id. § 241.13(i)(3).

[4] As the Court previously found and discussed in more depth in *Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994 (D. Nev. Nov. 6, 2025), Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **November 4, 2026**, to certify compliance with the Court's order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this __30__ day of October, 2026.

________________________________
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT